**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-0741-DOC (DFMx)                    Date:  July 10, 2015

Title: VASILI GATSINARIS, D.C., ET AL V. ART CORPORATE SOLUTIONS INC., ET AL.

_____

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

Deborah Goltz                               Not Present
Courtroom Clerk                             Court Reporter

ATTORNEYS PRESENT FOR              ATTORNEYS PRESENT FOR
PLAINTIFF:                                  DEFENDANT:
           None Present                              None Present

_____

PROCEEDINGS (IN CHAMBERS):    ORDER DENYING DEFENDANT
                              MICHAEL P. LEAHY'S MOTION
                              TO DISMISS FOR LACK OF
                              PERSONAL JURISDICTION [20];
                              GRANTING IN PART AND
                              DENYING IN PART DEFENDANTS'
                              MOTIONS TO DISMISS PURSUANT
                              TO F.R.C.P. 12(b)(1) AND 12(b)(6)
                              [21]

        Before the Court are Defendant P. Michael Leahy's ("Dr. Leahy") Motion to
Dismiss for Lack of Personal Jurisdiction (Dkt. 20) ("Leahy Motion") and Defendants
ART Corporate Solutions, Inc., Active Release Techniques, LLC, and Dr. Leahy's
Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6) ("Motion") (Dkt. 21). The
Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P.
78; L.R. 7-15. Having reviewed the papers and considered the parties' arguments, the
Court hereby GRANTS IN PART and DENIES IN PART the Motion to Dismiss
Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6) and DENIES WITHOUT PREJUDICE the
Leahy Motion.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                    Date: July 10, 2015
                                                                                                    Page 2

## I.      Background

Active Release Techniques ("ART") is a patented soft tissue system/movement based massage technique developed and created by Defendant Dr. Leahy to treat problems associated with muscles, tendons, ligaments, fascia and nerves. Order Denying Preliminary Injunction, May 29, 2015 ("Order") (Dkt. 24) at 1. According to the Defendants, the ART system employs several hundred unique treatment protocols, protected by six patents. *Id*. Due to its effectiveness, ART has become a popular treatment. Compl. (Dkt. 1-2) ¶ 13.

In order for a chiropractor to practice ART, he or she must receive a certification from Active Release Techniques LLC ("ART LLC"). Order at 2. Plaintiff Vasili Gatsinaris ("Dr. Gatsinaris") is a chiropractor trained and certified to use ART through ART LLC. Compl. ¶ 12.  He received his ART certification in 2002, and was continuously recertified in ART from 2002 until September 2014. *Id.*

In 2007, Dr. Leahy formed ART Corporate Solutions, Inc. ("ARTCS") to offer ART treatments to companies that wish to provide onsite treatment to their employees. *Id.* ¶¶ 12, 14. ARTCS contracts are serviced only by providers in the ART network, which consists of qualified providers who have been trained in the ART technique and have passed qualifying tests and verifications. *Id.* ¶ 15. Each provider in the network must sign a provider agreement (the "Provider Agreement") to provide ART services to corporate clients. *Id.* Ex. A. Under the Provider Agreement, a provider is allowed to use the ART name and trademarks for one year. *Id.* The Provider Agreement also includes provisions barring providers from providing ART treatments to corporate clients outside of the agreement:

> **d. Competition.** PROVIDER may contract with any PAYOR or EMPLOYER independently of the NETWORK. However, in the event the PROVIDER has both a direct and NETWORK Contract, the NETWORK contract shall prevail.
>
> PROVIDER shall not share practice specific pricing information or provider contract compensation with other Participating PROVIDERS.
>
> **Non-competition.** As ART Corporate Solutions, Inc. will provide education, training, support and access to proprietary systems the PROVIDER agrees to pursue new corporate first aid/wellness business only through, or in conjunction with, ART Corporate Solutions, Inc. In the event PROVIDER terminates or is terminated the NETWORK,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                         Date: July 10, 2015
                                                                         Page 3

> PROVIDER shall not solicit or directly contract with existing
> NETWORK PAYORS or EMPLOYERS for a period for two (2) years
> from the expiration of the Agreement for the purposes of providing
> ART treatment services.
>
> PROVIDER agrees that NETWORK shall be able to enforce this
> provision via an injunction or other necessary means to protect
> NETWORK relationships and PROVIDER shall bear the cost of such
> enforcement.

*Id.* ¶¶ 16-17.

Dr. Gatsinaris's corporation, Gatsinaris Chiropractic, Inc. ("GCI") entered into
agreements with several corporate clients independently of ARTCS to provide ART
treatment to those clients' employees. *Id.* ¶ 18. On August 14, 2014, Dr. Gatsinaris
received a "cease and desist" letter from ARTCS, accusing him and his companies of
violating the non-compete provision in the Provider Agreement. *Id.* Defendants
demanded that Dr. Gatsinaris refrain from soliciting and acquiring any "new corporate
first aid/wellness business," and that Plaintiffs either stop providing services to any
former ARTCS clients, or to transfer those contracts to ARTCS, or face legal action. *Id.* ¶
20.

On November 14, 2014, ARTCS filed a lawsuit in Colorado state court against Dr.
Gatsinaris and his companies for breach of contract, tortious interference with contract,
and unfair competition. *See* District Court, El Paso County, Colorado Case No. 14-cv-
34232 ("Colorado Action"); Decl. of Joseph C. Daniels ("Daniels Decl.") (Dkt. 21-1) Ex.
D.[1] Dr. Gatsinaris and his companies each challenged personal jurisdiction in Colorado.
Declaration of Vasili Gatsinaris ("Gatsinaris Decl.") (Dkt. 15-2) ¶¶ 27, 28. The Colorado
court denied their motion to dismiss for lack of personal jurisdiction on May 19, 2015.
Daniels Decl. Ex. E.

In August 2014, Dr. Gatsinaris registered online for the ART LLC certification
course for November 2014. Compl. ¶ 21. In early November 2014, Dr. Gatsinaris
contacted ART LLC about the course materials and was told that his registration had
been rejected. *Id.* ¶ 22. ART LLC informed Dr. Gatsinaris his money would be refunded,
and that Dr. Leahy would "get back to him" regarding the recertification process. *Id.*

Around April 1, 2015, Dr. Gatsinaris's largest corporate client, Parker Hannifin,
notified him that it was aware of Dr. Gatsinaris's expired certification to provide ART. It

---

[1] The Court takes judicial notice of the Colorado Action. Fed. R. Evid. 201.

Case No. SACV 15-0741-DOC (RNBx)                              Date: July 10, 2015
                                                                      Page 4

informed him that it would not allow Dr. Gatsinaris to continue providing treatment to its employees without proof of certification within 30 days. *Id.* ¶ 27. Dr. Gatsinaris suspects that Defendants contacted Parker Hannifin regarding the lack of certification. *Id.*

On April 28, 2015, Plaintiffs filed this lawsuit in Orange County Superior Court. In the Complaint, Plaintiffs assert six claims for: (1) declaratory relief; (2) unfair competition in violation of California Business and Professions Code § 17200 ("UCL"); (3) intentional interference with a contract; (4) intentional interference with prospective economic advantage; (5) negligent interference with a prospective economic advantage; and (6) violation of the Cartwright Act, California Business and Professions Code § 16720. *See* Compl.

Specifically, Plaintiffs allege that Defendants have conspired to restrain trade to gain an unfair advantage in the chiropractic service industry and to maintain a monopoly in corporate ART services. *Id.* ¶ 28. Plaintiffs allege that Defendants have engaged in anti-competitive acts by refusing to recertify Dr. Gatsinaris and other competitors, informing clients that Dr. Gatsinaris and other competitors are not certified in ART, and seeking to enforce illegal non-compete agreements. *Id.*

Plaintiffs immediately sought a temporary restraining order to enjoin Defendants from (1) "denying the automatic extension of Dr. Gatsinaris's ART certification" and (2) prohibiting Defendants from "interfering with the renewal process for Dr. Gatsinaris's ART certification." On May 1, 2015, the Orange County Superior Court granted the requested relief in part, prohibiting Defendants from "denying the automatic extension of Dr. Gatsinaris's ART certification to bridge any existing gap in certification until and subject to the determination of Plaintiffs' Application for Preliminary Injunction." *See* Declaration of Carol Gefis ("Gefis Decl.") Ex. 5, TRO and OSC Re: Preliminary Injunction (Dkt. 14-3). The state court set a hearing for the preliminary injunction on May 15 and instructed Defendants to reply by May 11, 2015. *Id.*

Defendants removed this action to this Court on May 11, 2015, before the scheduled hearing on the TRO in state court. *See* Notice of Removal (Dkt. 1).

On May 20, 2015, Plaintiffs filed a motion for preliminary injunction in this Court to enjoin Defendants from denying Plaintiffs' "automatic extension" of ART certification and interfering with the renewal process (Dkt. 15). The motion for preliminary injunction was denied on May 29, 2015 (Dkts. 23, 24).

On May 26, 2015, Defendants filed the present motions to dismiss. The first motion challenges this Court's personal jurisdiction over individual Defendant Dr. Leahy

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                    Date: July 10, 2015
                                                            Page 5

on the grounds that Dr. Leahy lacks minimum contacts with California (Dkt. 20). In the second motion, Defendants seek a stay or dismissal of the case under the *Colorado River* abstention doctrine, or in the alternative, dismissal of Plaintiffs' claims for failure to state a claim (Dkt. 21).

## II.     Colorado River Abstention

The Court will first address the question of abstention under the *Colorado River* doctrine, as it concerns the propriety of this Court's jurisdiction.

### A.     Legal Standard

Generally, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress . . . . This duty is not, however, absolute." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). "[C]onsiderations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," may counsel federal courts to abstain from proceedings concerning the same matter as a pendent state court action. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (alteration in original) (internal quotation marks omitted). "[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist." *Id.* at 818.

In order to determine whether to dismiss or stay an action under *Colorado River*, a district court must weigh eight factors: "(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011).

### B.     Analysis

Defendants raise a number of arguments in favor of abstention. The Court will address each of these arguments and the eight *Colorado River* factors in turn.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                  Date: July 10, 2015
                                                                                          Page 6

### 1.      Jurisdiction Over Res

The parties agree that the first factor is not relevant in this case as the case does not involve a specific piece of property. It does not weigh for or against abstention.

### 2.      Inconvenience of the Federal Forum

When evaluating this factor, courts consider the general convenience of the federal forum to the parties. *See Colorado River*, 424 U.S. at 818 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)) (referencing factors considered under forum non conveniens analysis, including the ease of access to proof, availability of witnesses, and other practical problems). The question is not whether a party can demonstrate that the federal forum is more or less convenient than the state forum, but rather whether "the inconvenience of the federal forum is so great that this factor points toward abstention." *Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990).

Here, both parties acknowledge that this factor is likely a wash because all Plaintiffs reside in California and all Defendants reside in Colorado.

Defendants claim, however, that given the Colorado choice-of-law provision in the Provider Agreement, it would be inconvenient to require them to litigate a case in California, applying Colorado law, especially because they filed first.

The issue here is not who filed the case first or whether the state or federal forum is more convenient; the proper inquiry is whether the inconvenience of the federal forum is so significant to favor abstention. *Id.* Defendants will have to travel from Colorado to California for the present suit, which is a considerable distance. However, this alone is not sufficiently great to find for abstention, given that Plaintiffs are all based in California, the Provider Agreement was signed in California, and the services rendered under the agreement were all provided in California. The convenience of the federal forum thus weighs against abstention.

### 3.      The Desire to Avoid Piecemeal Litigation

 "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *R.R. St.*, 656 F.3d at 979 (internal quotation marks and citations omitted). However, "[t]he mere possibility of piecemeal litigation does not constitute an exceptional circumstance" justifying judicial abstention by the federal court. *Id.* "Instead, the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 15-0741-DOC (RNBx)                                      Date: July 10, 2015
                                                                     Page 7

In *Travelers*, the district court stayed a case solely on the basis of the desire to avoid piecemeal litigation, where the underlying litigation was a standard contract and tort dispute. 914 F.2d at 1369. The Ninth Circuit reversed, finding that the lower court had improperly weighed the risk of piecemeal adjudication. *Id.* First, it noted that there was no federal legislation evincing a policy to avoid piecemeal litigation and no substantial risk of inconsistent judgments. *Id.* The Ninth Circuit emphasized that the case involved ordinary contract and tort issues, rather than important real property rights, such as those implicated in *Colorado River*. *Id.* The Ninth Circuit also found that the state court in the parallel matter had made no substantive rulings, so there was no certainty that there would be a duplication of efforts. *Id.* (citing *American Int'l Underwriters v. Continental Ins. Co.*, 843 F.3d 1253, 1258 (9th Cir. 1988) (staying case where the state court had already decided several substantive issues and it was clear that the federal court would have to decide those same issues if it exercised jurisdiction)). Additionally, whichever judgment on the merits was established first was likely have a conclusive effect on the other court. *Id.* Accordingly, the court found that this factor weighed against abstention.

Here, Defendants argue that all of Plaintiffs' claims in the present suit are premised on the same issues as those in the Colorado Action – whether the relevant provisions of the Provider Agreement are valid, whether Plaintiffs violated those terms, and whether Plaintiffs intentionally interfered with ARTCS's contracts. Mot. at 10-11. Defendants further argue that all of Plaintiffs' claims in this suit are compulsory counterclaims in the Colorado Action that will be barred should Plaintiffs fail to raise them. *Id.* at 11. If Plaintiffs do raise these counterclaims, Defendants argue that it would result in duplicative litigation over identical issues in state and federal court. *Id.*

Plaintiffs assert that that the potential for duplicative litigation is mitigated by the doctrine of res judicata because the first-rendered judgment will have a preclusive effect on any remaining proceedings. *Id.* at 8. Plaintiffs also assert that the issues in the concurrent cases are not the same, as the federal action pertains to California law, while the Colorado Action pertains to Colorado law.

These arguments fall short. Like in *Travelers*, the claims in this case revolve around ordinary contract and tort principles, so there are no "special concerns" involving an explicit policy of avoiding piecemeal adjudication. *See* 914 F.2d at 1369. Also, the Colorado state court has not issued any substantive rulings with regards to the merits of the case. The parties have only engaged in limited discovery in the Colorado Action, which has not yet occurred in this Court. If *res judicata* bars any claims, the parties may raise those arguments as they arise. Although hearing this case may require duplication of

time and effort by the litigants as well as the Court, this alone does not rise to the level of justifying judicial abstention.

While there is some duplication of efforts, there is no special concern over piecemeal litigation. For the reasons above, this factor weighs somewhat against abstention.

### 4.       The Order in Which the Forums Obtained Jurisdiction

This factor is to be applied in a "pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp*, 1460 U.S. 1, 21 (1983). Priority should not be determined solely on which complaint was filed first, but evaluated based on how much progress has been made in each action. *Id*.

In *American Int'l. Underwriters*, substantive progress had been made in the two-and-a-half years of litigation in state court, while little has occurred in the federal court. 843 F.2d 1253 at 1258. Accordingly, the Ninth Circuit found for abstention based on this factor. In contrast, this Court found against abstention in *Trinity Christian Center of Santa Ana, Inc. v. McVeigh*, where the state court action had only been filed a few months before the federal action and had done little else other than to permit for an amended complaint, while the federal Court was entertaining dispositive motions against the defendant. No. 13-1334, 2013 WL 5935562 at *4.

Here, the Colorado state court has adjudicated the issue of personal jurisdiction (finding that the court has personal jurisdiction over Plaintiffs in this case), ordered a scheduling conference, and the parties have engaged in limited discovery. This Court has only issued an order denying a motion for preliminary injunction. Mot. at 12. Neither case has advanced much at all, so this factor is a wash.

### 5.       Source of Law for the Merits

Next, the court must address the source of law. The Ninth Circuit has held that "although the presence of federal-law issues must always be a major consideration weighing against surrender, the presence of state-law issues may weigh in favor of that surrender only in some rare circumstances." *Travelers*, 914 F.2d at 1370.

In *Trinity*, this Court found no reason to believe that a New York state court would be better able to apply California state law, which governed the tort action in federal court, than a California federal court. Accordingly, this Court found against abstention.

There are no federal-law issues present in this case. While Plaintiffs assert that their claims are governed by California law, Opp'n at 4, Defendants point out that the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                              Date: July 10, 2015
                                                                          Page 9

choice-of-law provision in the Provide Agreement designates that Colorado law applies
to the present suit. Compl.; Ex. 1, at 14. If Defendants are correct, a Colorado state court
is better able to apply Colorado state laws concerning contracts and unfair competition
than a California federal court. However, it is not unusual for federal courts to apply
different states' laws. And, as discussed below, California law may be applicable in some
respects.

        For these reasons, this factor is neutral or weighs only slightly in favor of
abstention.

### 6.        Adequacy of the State Court

        "A district court may not stay or dismiss the federal proceeding if the state
proceeding cannot adequately protect the rights of the federal litigants." *R.R. St. & Co.*,
656 F.3d at 981. Here, there are no federal issues that the state court would be required to
consider. Thus, the state court can adequately protect Plaintiffs' rights. Accordingly, this
factor does not weigh against abstention.

### 7.        The Desire to Avoid Forum Shopping

        Forum shopping is the "practice of choosing the most favorable jurisdiction or
court in which a claim might be heard." Black's Law Dictionary 726 (9th ed. 2009).
"[F]orum shopping weighs in favor of a stay when the party opposing the stay seeks to
avoid adverse rulings made by the state court or to gain a tactical advantage from the
application of federal court rules." *Travelers*, 914 F.2d at 1371.

        Defendants allege that Plaintiffs are engaging in forum shopping by filing suit in
California in order to circumvent the Colorado choice-of-law provision in the Provider
Agreement, and to create conflicting decisions between the two actions. Mot. at 14.
Plaintiffs counter that they filed the present suit before the Colorado state court subjected
them to personal jurisdiction in the Colorado Action and before either party was certain
as to the ultimate venue for the present action. Opp'n at 10.

        Here, it does not appear Plaintiffs are avoiding adverse rulings from the state
court. First, given the choice-of-law provision, there was a good chance that a California
court would apply Colorado law, giving Plaintiffs no tactical advantage. Second, given
that Plaintiffs are all from California and the services provided under the disputed
Provider Agreement were all rendered in California, Plaintiffs may have believed that the
proper venue was in California, providing an innocuous justification for filing suit there.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                      Date: July 10, 2015
                                                                     Page 10

Nor does it appear that Plaintiffs attempted to gain a tactical advantage from federal rules. Plaintiffs did not file in federal court in California; rather, Defendants removed the present action from the Orange County Superior Court.

For these reasons, this factor does not weigh in favor of abstention.

### 8.    Parallel Suits

The parallel suits factor considers whether the state court action would resolve all of the issues in the federal action. *R.R. St.*, 656 F.3d at 982. "Exact parallelism" is not required, but the two actions must be "substantially similar." *Id.* If there is "substantial doubt as to whether the state proceedings will resolve the federal action," a *Colorado River* stay or dismissal is inappropriate. *Id.*

Defendants argue that the issues in this case and the Colorado Action are substantially the same. Both involve disputes over whether the alleged non-compete language in the Provider Agreement is enforceable and whether Dr. Gatsinaris has the right to use ART intellectual property without permission. Defendants also argue that the parties in both actions are substantially the same, though not identical. Mot. at 9.

Plaintiffs, on the other hand, argue that the cases are not parallel because the Colorado Action will apply Colorado law, while this case should be subject to California law, given that the claims are based on California law. Plaintiffs also argue that their claims are not limited to the Provider Agreement, but pertain to unfair competition and violating California antitrust laws. Opp'n at 4-5.

Both the Colorado Action and the present suit involve nearly identical parties. Both suits concern issues regarding the Provider Agreement's validity, whether under California or Colorado law. To adjudicate Defendants' claims, the Colorado court would have to decide which state's law applies and would determine the Provider Agreement's validity, decisions which may have preclusive effects on this Court. This decision will most likely resolve many of the issues in this case.

For these reasons, this factor weighs in favor of abstention.

### 9.    Balancing the Factors

"Ultimately, the decision whether to dismiss a federal action because of parallel state-court litigation hinges on a careful balancing of the [relevant] factors . . . with the balance heavily weighted in favor of the exercise of jurisdiction." *R.R. St. & Co.*, 656 F.3d at 983 (internal quotation marks omitted). The abdication of federal jurisdiction can

be justified only under "exceptional circumstances," and only the "clearest of justifications" support dismissal. *Colorado River*, 424 U.S. at 818-19.

Here, only one factor truly weighs in favor of abstention –the parallel nature of the concurrent suits. The remaining factors are either neutral or in favor of exercising jurisdiction. Accordingly, this does not constitute the "exceptional circumstances" or the "clearest of justifications" for this Court to either dismiss or stay this case and Defendants' request for the Court to stay or dismiss this case under *Colorado River* is DENIED.

### III.   Failure to State a Claim

As the Court has determined it should properly exercise jurisdiction, it will now consider Defendants' remaining arguments regarding Plaintiffs' failure to state a claim. Defendants argue that Plaintiffs' statutory claims fail to properly allege claims under California's Cartwright Act and unfair competition laws, and that Plaintiffs' tort claims should be dismissed under the economic loss rule. The Court addresses each theory in turn.

#### A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A motion to dismiss under Rule 12(b)(6) cannot be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010). In addition, a motion to dismiss may be

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                    Date: July 10, 2015
                                                                                        Page 12

granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiffs' favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009).

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**B.      Choice-of-Law**

As a threshold matter, the Court will consider the applicable law.

In their motion to dismiss, Defendants argue that the choice-of-law provision in the Provider Agreement requires the Court to apply Colorado law to all claims. Mot. at 12, 19, 20. Plaintiffs argue that their claims are not limited to the Provider Agreement; and therefore are not bound by the choice-of-law provision. Specifically, they argue that Defendants engaged in tortious interference outside of the Provider Agreement and violated unfair competition and antitrust laws. Opp'n at 4. Plaintiffs further argue that Section 29 of the Provider Agreement allows for application of California law where it is more protective than Colorado law. Opp'n. at 17-19.

The provision titled "GOVERNING LAW" in the Provider Agreement provides as follows:

> This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by and construed in accordance with the laws of the state of Colorado.

Compl., Ex. 1. at 14.

Section 29 of the Provider Agreement, titled "CONFORMITY," provides as follows:

> Any provision of this Agreement that is in conflict with the statutes, local laws, or regulations of the state in which services are provided, is

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                    Date: July 10, 2015
                                                                                        Page 13

hereby amended to conform to the minimum requirements of such
statutes.

*Id.*

Without deciding the choice of law issue definitively, the Court will assume
Plaintiffs are correct, and apply California law. However, it will also consider certain
claims under Colorado law.

### C.    Analysis

#### 1.    Plaintiffs' Claim Under the Cartwright Act

Plaintiffs claim that Defendants violated the Cartwright Act, Cal. Bus. & Prof.
Code § 16720, which prohibits anti-competitive activity. Compl. at 14. Plaintiffs allege
that Defendants engaged or conspired to engage in activity to gain an unfair advantage in
the market for chiropractic services and to maintain a monopoly on corporate ART
services by restraining trade and commerce of Plaintiffs and other competitors. *Id.* ¶ 71.

##### a.    Legal Standard

"The Cartwright Act prohibits combinations in unreasonable restraint of trade."
*Marsh v. Anesthesia Serv. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 493 (2011). The focus
of the Act is "on the punishment of violators for the larger purpose of promoting free
competition." *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 7
(2012).

"Injury to an individual plaintiff is insufficient to establish standing to assert
antitrust violations." *Marsh*, 200 Cal. App. 4th at 495 (citing *Korshin v. Benedictine
Hosp.*, 34 F. Supp. 2d 133, 138 (N.D.N.Y. 1999)). An antitrust complaint must allege
"facts from which injury to market-wide competition can be inferred." *Id.* Additionally,
"[a]ntitrust claims may be dismissed under Rule 12(b)(6) if the plaintiff's 'relevant
market' definition is facially unsustainable." *Dang v. San Francisco Forty Niners*, 964 F.
Supp. 2d 1097, 1104 (N.D. Cal. 2013). The antitrust laws, of course, "are primarily
concerned with interbrand competition" and the prevention of anticompetitive activities
among separate companies and brand- and trademark-holders. *Ron Tonkin Gran Turismo,
Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1387 (9th Cir. 1981). Therefore, single-
brand markets do not constitute "legally cognizable markets" for the purposes of an
antitrust suit. *Dang*, 964 F. Supp. 2d at 1105. A manufacturer's own products do not
themselves typically comprise of a relevant product market. *Id.* Accordingly, "courts
have repeatedly rejected proposed relevant markets defined by a company's trademark."
*Id.*

To maintain an action under the Cartwright Act, the plaintiff must establish: (1) the formation and operation of the conspiracy; (2) illegal acts done pursuant thereto; and (3) damage proximately caused by such acts. *Asahi*, 204 Cal. App. 4th at 8. Further, "[i]njury to an individual plaintiff is insufficient to establish standing to assert antitrust violations." *Marsh*, 200 Cal. App. 4th at 493. When pleading an antitrust violation, allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 553. The complaint must allege facts such as a specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin. *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1046–47 (9th Cir. 2008).

### b.      Analysis

Defendants contend that Plaintiffs have failed to identify a cognizable relevant market under the Cartwright Act because the market is defined solely by the ART Companies' trademark. Reply at 9.

Plaintiffs argue that they have provided "detailed allegations" regarding Defendant's scheme to create a monopoly in corporate ART services through the Provider Agreement. Opp'n at 13. Specifically, they point to the fact that Defendants have refused to recertify Dr. Gatsinaris and "other competitors" because they compete with Defendants, that Defendants require thousands of providers to sign illegal agreements, and to enforce these illegal agreements to stifle competition. *Id.* Plaintiffs assert that injury to market-wide competition can be inferred from the allegedly illegal Provider Agreement and its enforcement. *Id.*

First, Plaintiffs have not identified a "relevant market" for the purposes of the Cartwright Act. A contrasting case is illustrative. In *Dang*, the court found that where the plaintiff alleged a market consisting of intellectual property of over thirty different and competing professional football teams, as well as the intellectual property owned by the National Football League, plaintiff had not simply alleged a single-brand or trademark-based market improper for an antitrust suit. 964 F. Supp. 2d at 1106. However, unlike in *Dang*, here, the relevant market identified by Plaintiffs consists entirely of Defendants' proprietary information. Also unlike *Dang*, wherein the plaintiff identified a market of independent and competitive brands, Plaintiffs have not identified a market consisting of any brand or entity other than Defendants' ART trademarked property.

Plaintiffs have also not provided sufficient facts to establish a facially plausible claim under the Cartwright Act. Plaintiffs have asserted only legal conclusions regarding how Defendants have engaged in anti-competitive behavior with market-wide impact by stating that the Provider Agreement is unenforceable and has affected "thousands" of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                Date: July 10, 2015
                                                                                              Page 15

other providers. "[T]hese allegations are mere legal conclusions, without any specifics, and are therefore insufficient to show the formation and operation of a conspiracy." *Starlight Cinemas v. Regal Entm't Grp.*, No. CV 14-5463-R, 2014 WL 7781018, at *1 (C.D. Cal. Oct. 23, 2014). This alone is not sufficient to demonstrate a conspiracy or infer market-wide anti-competitive behavior. *Id.* Accordingly, this claim fails. The claim is DISMISSED WITHOUT PREJUDICE, for Plaintiffs to plead the elements required for a Cartwright Act violation, including injury to market-wide competition and a relevant market.

> **2.      Plaintiffs' Claim for Violation of California's Unfair Competition Law**

Plaintiffs allege that Defendants have violated California's UCL, Cal. Bus. & Prof. Code § 17200, based on Defendants' alleged violations of California Business and Professions Code § 16600 and the Cartwright Act. Compl. ¶ 41. Because the Court has dismissed Plaintiffs' Cartwright Act claim, it will focus on violations of § 16600 as the predicate for Plaintiffs' UCL claim.

> **a.      Legal Standard**

"The purpose of the [UCL] is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1381 (2010). The UCL does not prohibit specific acts, but broadly prohibits "any unlawful, unfair or fraudulent business act or practice." *Id.* (quoting Cal. Bus. & Prof. Code § 17200). Accordingly, the UCL "'borrows' violations of other laws and treats them as 'unlawful' practices independently actionable under the unfair competition law." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001) (internal citations omitted).

> **b.      Analysis**

Plaintiffs allege that Defendants have violated California Business and Professions Code § 16600 by enforcing an allegedly illegal non-compete provision. Plaintiffs argue that despite the Provider Agreement's Colorado choice-of-law provision, Section 29 of the Provider Agreement allows for the application of California law in this circumstance, where it indicates that:

> Any provision of this Agreement that is in conflict with the statutes,
> local laws, or regulations of the state in which services are provided, is
> hereby amended to conform to the minimum requirements of such
> statutes.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                Date: July 10, 2015
                                                                             Page 16

Compl., Ex. 1. Plaintiffs assert that because California law is "more protective" than
Colorado regarding non-compete agreements, California law applies. Opp'n at 18. The
Court finds that, regardless of the language of the agreement, California public policy
dictates that § 16600 applies to the contract. *See Scott v. Snelling & Snelling, Inc.*, 732 F.
Supp. 1034, 1040 (N.D. Cal. 1990) ("A simple reading of [§ 16600], giving the words
their ordinary meaning, demonstrates that the California state legislature intended section
16600 to apply to any sort of contract which contains a covenant restraining
competition.")

Defendants argue that even if § 16600 applies, Plaintiffs' claim fails because the
provision is not a true non-compete provision, and Plaintiffs allege only individualized
harm. *Id.* at 20.

Section 16600 provides:

> Except as provided in this chapter, every contract by which anyone is
> restrained from engaging in a lawful profession, trade, or business of
> any kind is to that extent void.

This protection against restraint of employment qualifies as a strong public policy
in California. *Latona v. Aetna U.S. Healthcare Inc.*, 82 F. Supp. 2d 1089, 1093-94 (C.D.
Cal. 1999) (citing *Scott,* 732 F. Supp. at 1039–40; *Application Group, Inc. v. Hunter
Group, Inc.,* 61 Cal. App. 4th 881, 900 (1998); *KGB, Inc. v. Giannoulas,* 104 Cal. App.
3d 844, 848 (1980); *Frame v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 20 Cal. App.
3d 668, 673 (1971).

Section 16600 generally voids all post-employment restraints on trade. *See*, *e.g.*,
*Robert Half Int'l, Inc. v. Ainsworth*, 68 F. Supp. 3d 1178 (S.D. Cal. 2014); *Retirement
Group v. Galaten*, 176 Cal. App. 4th 1226 (2009) (prohibiting the companies former
financial advisors from soliciting the investment service provider's customers and
employees violated § 16600); *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946-47
(2008) ("Under the statute's plain meaning, therefore, an employer cannot by contract
restrain a former employee from engaging in his or her profession, trade, or business
unless the agreement falls within one of the exceptions to the rule."); *Kolani v. Gluska*,
64 Cal. App. 4th 402 (1998) (non-compete agreements prohibiting employees from
soliciting former employers' clients for a certain time after the termination of their
employment was void under § 16600); *Scott v. Snelling and Snelling, Inc.*, 732 F. Supp.
1034 (N.D. Cal. 1990) (franchise agreement that prohibited a licensee from opening a
competing business within a certain radius, from directly contacting or servicing clients

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                    Date: July 10, 2015
                                                                                Page 17

of the franchise, or from employing or contacting workers of the franchise after termination of the franchise violated § 16600).

On the contrary, so-called "exclusive-dealing" contracts, meant to limit competition between business associates while the parties are in business, are "not necessarily invalid."[2] *Dayton Time Lock Serv., Inc. v. Silent Watchman Corp.*, 52 Cal. App. 3d 1, 6 (Cal. Ct. App. 1975).

> They may provide an incentive for the marketing of new products and a guarante of quality-control distribution. They are proscribed when it is probable that performance of the contract will foreclose competition in a substantial share of the affected line of commerce.

*Id.* In *Dayton Time Lock*, the Court considered an exclusive dealing arrangement between a franchise holder and a company, whereby the arrangement allowed the franchise holder to lease the company's "Dayton Time Lock" system to only certain customers in certain areas. *Id.* at 7. The court of appeals affirmed the trial court's determination that the provision was enforceable, because the plaintiff had failed to establish that the restriction would foreclose competition in a substantial share of the affected line of commerce. *Id.*

The Ninth Circuit has reaffirmed the position of California courts that "in-term covenant[s] not to compete in a franchise-like agreement" such as this one "will be void if it forecloses competition in a substantial share of a business, trade, or market." *Comedy Club, Inc. v. Improv W. Associates*, 553 F.3d 1277, 1292 (9th Cir. 2009).

The "Non-Competition" provision in the Provider Agreement states:

> As ART Corporate Solutions, Inc. will provide education, training, support and access to proprietary systems the PROVIDER agrees to pursue new corporate first aid/wellness business only through, or in conjunction with, ART Corporate Solutions, Inc. In the event PROVIDER terminates or is terminated the NETWORK, PROVIDER shall not solicit or directly contract with existing NETWORK PAYORS or EMPLOYERS for a period for two (2) years from the expiration of the Agreement for the purposes of providing ART treatment services.

---

[2] "Exclusive dealing involves an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 15-0741-DOC (RNBx)                                      Date: July 10, 2015
                                                                           Page 18

Plaintiffs allege that the agreement is void on its face, because it prevents him from engaging in his lawful and chosen profession. Compl. ¶ 35.

While in the provider network, Dr. Gatsinaris and ARTCS were not competitors – rather, while part of the network, Dr. Gatsinaris agreed to provide "on-site" chiropractic services through the ARTCS network. It appears to the Court that the relationship between ARTCS and Plaintiffs was a "franchise-like agreement." ARTCS's business is providing on-site corporate services through its network of providers using the ART technique. Dr. Gatsinaris worked with Defendants to provide ART services to corporate clients. The restriction prohibited Plaintiffs from pursuing new on-site corporate wellness business independent of ARTCS. The claim fails because Plaintiffs have failed to allege facts to support that the arrangement foreclosed competition in the on-site corporate wellness market.

As to the post-agreement restraint on trade, which Plaintiffs allege Defendants are using to "deny Dr. Gatsinaris's ART Certification," Compl. ¶ 31, the allegations likewise fall short. The post-network "non-compete" provision does not restrict Plaintiffs' ability to compete or practice his profession; it restricts only Plaintiffs' ability to use Defendants' proprietary information in so doing. Plaintiffs have not directed this court to any authority prohibiting such a restriction, and this Court has not identified any. Therefore, on its face, the provision does not appear to run afoul of §16600.

Accordingly, Plaintiffs have not articulated a violation of § 16600 based on the "non-compete" provision.

Finally, as the prior allegations have failed, the Court does not find Plaintiffs' general allegations of anti-competitive behavior are sufficient to show that Defendants have violated the "spirit" of the anti-trust laws under the UCL.

As Plaintiffs have not alleged an unfair, unlawful, or fraudulent practice, Plaintiffs' UCL claim is DISMISSED WITHOUT PREJUDICE.

### 3.     Plaintiffs' Tort Claims

Plaintiffs allege three independent tort claims under California law: (1) intentional interference with contractual relations, (2) intentional interference with prospective economic advantage, and (3) negligent interference with prospective economic relations. Compl. ¶¶ 45-69. Specifically, Plaintiffs allege that Defendants intentionally or negligently induced third-party corporate employers to breach their preexisting and anticipated contracts with Plaintiffs.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                    Date: July 10, 2015
                                                                        Page 19

Defendants argue that Plaintiffs' tort claims should be dismissed under the economic loss rule under both Colorado and California law because each of the tort claims is premised on Defendants' breach or failure to perform under the Provider Agreement, which does not involve product defect damages or a "special relationship" between the parties. Mot. at 20-21.

### a.        The Economic Loss Rule

In Colorado, "[t]he economic loss rule provides that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty under tort law." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).

In California, the economic loss rule generally bars plaintiffs with only economic losses from bringing tort claims except in tort cases involving products liability. *See KB Home v. Superior Court*, 112 Cal. App. 4th 1076 (2003); *Jimenez v. Superior Court*, 29 Cal. 4th 473 (2002); *Sacramento Reg'l Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289 (1984). "The economic loss rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.'" *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013) (quoting *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979, 988 (2004).

The two cases on which Defendants rely each concern tort claims that arise out of contracts between the parties to the suit. In *Town of Alma*, plaintiff sued defendant for breach of contract and negligence over the performance of a construction contract. 10 P.3d at 1258. In *NuCal Foods*, 918 F. Supp. 2d at 1026, plaintiff sued defendant for breach of implied warranty and negligence, among other claims, over the performance of a commercial contract. In both cases, plaintiffs' tort claims were barred.

In contrast, here, Plaintiffs do not allege that Defendants' interfering conduct breaches the Provider Agreement. Rather, Plaintiffs allege that Defendants intentionally or negligently disrupted Plaintiffs' existing and prospective economic relationships with third parties by contacting Plaintiffs' clients and inducing them to terminate their contacts with Plaintiffs. Compl. ¶¶ 49, 56, 65-66. Accordingly, this Court finds that the economic loss rule does not preclude Plaintiffs' tortious interference claims, either under California or Colorado law.

### b.        Sufficiency of Pleadings

The Court will next address whether Plaintiffs have adequately pleaded each of their tort claims. It is unclear whether Plaintiffs' tort claims relate to the "validity, interpretation, performance [or] enforcement" of the Provider Agreement, such that

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                Date: July 10, 2015
                                                               Page 20

Colorado law should apply. The Court will thus consider the claims under both Colorado and California law.

### (1)     Intentional Interference with Contractual Relations

In Colorado, intentional interference with contractual relations occurs when the defendant (1) is aware of a contract between two parties; (2) intends for one of the parties to breach the contract, and (3) induces the party to breach or make it impossible for the party to perform. *Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 871 (Colo. 2004). The defendant must also have acted "improperly" in causing the result. *Id.*

To determine whether a defendant acted improperly, courts consider

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relation between the parties.

*Id.*

In California, "[t]he elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Here, Plaintiffs claim that they have valid contracts with third-party corporate employers, that Defendants were aware of such contracts, that Defendants intentionally contacted these third-party corporate employers to induce breach of these contracts, and that these contracts were actually breached, resulting in harm to Plaintiffs. Compl. ¶¶ 46-50. However, for the reasons set forth above, the Plaintiffs have not set forth sufficient facts explaining how the behavior was *wrongful*. Accordingly, this claim stands under California law but fails under Colorado law.

The motion to dismiss is DENIED as to this claim. However, Defendant may renew arguments as to why Colorado law is applicable at a later date.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                    Date: July 10, 2015

### (2)      Intentional and Negligent Interference with Prospective Economic Relations

Because Colorado does not provide for either intentional or negligent interference with prospective economic advantage, the Court will address these claims only under California law.

Under California law, the five elements for intentional interference with prospective economic advantage are: "(1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Youst v. Longo*, 43 Cal. 3d 64, 71 n.6 (1987). "[A] plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).

Plaintiffs have adequately pleaded the five elements for intentional interference with prospective economic advantage, which mirror that of intentional interference with contractual relations. Compl. ¶¶ 54-60. The remaining issue is whether Plaintiffs have established that Defendants have engaged in conduct that is independently wrongful from the interference.

Plaintiffs allege that Defendants have committed independent wrongful acts by engaging in conduct that violates California Business and Professions Code §§ 16600, 16720, and 17200. *Id.* ¶ 56. However, as the Court had previously addressed, Plaintiffs' allegations regarding these violations fail. Accordingly, Plaintiffs have not properly established that Defendants have engaged in wrongful conduct outside of the interference, and this claim is DISMISSED WITHOUT PREJUDICE.

The Court will next address Plaintiffs' claim of negligent interference with prospective economic relations.

> The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                      Date: July 10, 2015
                                                                                                Page 22

> and was aware or should have been aware that if it did not act with due
> care its actions would interfere with this relationship and cause plaintiff
> to lose in whole or in part the probable future economic benefit or
> advantage of the relationship; (3) the defendant was negligent; and (4)
> such negligence caused damage to plaintiff in that the relationship was
> actually interfered with or disrupted and plaintiff lost in whole or in part
> the economic benefits or advantage reasonably expected from the
> relationship.

*N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997).  "The tort of
negligent interference with economic relationship arises only when the defendant owes
the plaintiff a duty of care." *Limandri v. Judkins*, 52 Cal. App. 4th 326, 348 (1997).

Here, Plaintiffs have not alleged how Defendants owe them a duty of care.
Plaintiffs only echo their allegation that Defendants' actions are independently wrongful,
apart from the interference, an argument that fails for the reasons above, and fails to
establish a legal duty. Accordingly, this claim is DISMISSED WITHOUT PREJUDICE.

## IV.     Plaintiffs' Claim for Declaratory Relief

Plaintiffs asks this Court for declaratory judgment that the non-compete provision
of the Provider Agreement are void under California Business and Professions Code §
16600 because it restricts Plaintiffs from engaging in their chosen profession.

Defendants argue that this claim should be dismissed under the *Brillhart*/*Wilton*
doctrine because it can be better settled in the Colorado Action.

### A.     Legal Standard

A district court has "discretion to dismiss a federal declaratory judgment action
when 'the questions in controversy…can better be settled in a pending state court
proceeding. *R.R. St.*, 656 F.3d at 975 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316
U.S. 491, 62 (1942)). A court may decline to entertain a federal declaratory judgment if
the state court action allows for "ventilation of the same state law issues." *Wilton v. Seven
Falls Co.*, 515 U.S. 277, 283 (1995). In this regard, district courts have broad discretion
so long as it furthers the Declaratory Judgment Act's goal of promoting "judicial
economy and cooperative federalism." *Id.* (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133
F.3d 1220 (9th Cir. 1998)).  However, if an action contains both claims for monetary and
declaratory relief, the district court "should not, as a general rule, remand or decline to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                        Date: July 10, 2015
                                                                     Page 23

entertain the claim for declaratory relief." *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998).

Under the *Brillhart/Wilton* doctrine, the district court should evaluate three factors in choosing to hear a declaratory judgment action: (1) avoiding needless determination of state law issues; (2) discouraging forum shopping; and (3) avoiding duplicative litigation. *Dizol*, 133 F.3d at 1225.

**B.      Analysis**

Defendant argues that Plaintiffs' claim for declaratory relief should be dismissed for similar reasons articulated under the *Colorado River* doctrine – namely, that the claim are compulsory counterclaims in the Colorado Action, and that Plaintiffs are engaging in forum shopping to avoid the Colorado choice-of-law provision in the Provider Agreement.

As discussed previously, there is not enough for this Court to find that Plaintiffs are engaged in forum shopping. Moreover, this case involves claims for both monetary damages and declaratory relief. Remanding the declaratory judgment claim in this case while retaining Plaintiffs' claims for damages would still result in piecemeal litigation, which runs contrary to the *Wilton/Brillhart* goals of judicial efficiency. A district court's decision to dismiss a federal declaratory judgment action is one founded on its discretion. In this case, the Court does not find that it has the proper grounds to dismiss Plaintiffs' declaratory judgment claim.

Plaintiffs' request for declaratory relief, however, assumes that the non-compete provision in the Provider Agreement contravenes California Business and Professions Code § 16600. In addressing Plaintiffs' UCL claim, the Court has already found that based on the allegations in the Complaint, the "non-compete" provision is not covered by § 16600. This claim fails for the same reasons that Plaintiffs' UCL claim fails.

Accordingly, this claim is DISMISSED WITHOUT PREJUDICE.

**V.     Defendant Leahy's Motion to Dismiss for Lack of Personal Jurisdiction**

**A.      Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to dismiss an action as to him or herself because a court lacks personal jurisdiction over him or her. Where there is no federal statute controlling the Court's exercise of personal jurisdiction, federal courts must look to the forum state's jurisdictional statute to determine whether it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 15-0741-DOC (RNBx)                                    Date: July 10, 2015
                                                                                              Page 24

proper to assert personal jurisdiction. *Id.* The California long-arm statute provides that
"[a] court of this state may exercise jurisdiction on any basis not inconsistent with the
Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10.  Thus,
the court's jurisdictional analysis under California law and federal due process is the
same. *Bauman v. DaimlerChrysler Corp*., 644 F.3d 909, 919 (9th Cir. 2011); *Yahoo! Inc.
v. La Ligue Control Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

        For a court to exercise personal jurisdiction over a nonresident defendant, the
defendant must have "minimum contacts" with the forum state so that the exercise of
jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l
Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The plaintiff bears the burden of
showing that the court has personal jurisdiction over the defendants. *See Pebble Beach
Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "[T]his demonstration requires that
the plaintiff make only a prima facie showing of jurisdictional facts to withstand the
motion to dismiss."  *Id*. (quotations omitted). "The plaintiff cannot simply rest on the
bare allegations of its complaint, but uncontroverted allegations in the complaint must be
taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir.
2011) (quotations omitted). In assessing whether a defendant has minimum contacts with
the forum state, courts may consider evidence presented in affidavits and declarations in
determining personal jurisdiction. *Doe v. Unocal Corp*., 248 F.3d 915, 922 (9th Cir.
2001).

        Depending on the nature of the contacts between the defendant and the forum
state, personal jurisdiction is characterized as either "specific or case-linked jurisdiction"
or "general or all-purpose jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v.
Brown*, 131 S. Ct. 2846, 2851 (2011). General jurisdiction arises where defendant's
activities in the forum are sufficiently "substantial" or "continuous and systematic" to
justify the exercise of jurisdiction over him in all matters, while "specific jurisdiction"
arises when a defendant's specific contacts with the forum give rise to the claim in
question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16
(1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050–51 (9th Cir. 1997).

        **B.      Analysis**

        Defendant Leahy challenges this court's personal jurisdiction. Leahy claims that
he is not a party to the Provider Agreement at question in this suit, and that he is a
Colorado resident that neither lives nor practices in California, and is therefore not
subject to personal jurisdiction in California under either a general or specific jurisdiction
theory. *See* Leahy Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 15-0741-DOC (RNBx)                              Date: July 10, 2015
                                                              Page 25

        In their Opposition, Plaintiffs argue that Dr. Leahy is subject to both specific and
general jurisdiction in California as the controlling owner of both ART LLC and ARTCS.
Plaintiffs argue that this Court has personal jurisdiction because Dr. Leahy went to
chiropractic school in California and regularly visits California. Plaintiffs also allege that
as Dr. Leahy had the final decision-making authority at ART LLC and ARTCS with
regards to the matters at issue in this litigation, and that he has committed intentional torts
that caused injury within California. In the event that this Court finds that Plaintiffs have
not established personal jurisdiction, they request additional time to allow for discovery
on this issue.

        This Court is inclined to agree with Defendants regarding the Court's lack of
personal jurisdiction over Dr. Leahy at this juncture.

        First, the exercise of general jurisdiction appears to be untenable. General, or "all-
purpose" personal jurisdiction subjects a defendant to suit in a forum only where a
defendant's contacts with that forum "are so continuous and systematic as to render them
essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754
(2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846,
2851 (2011)).

        As a matter of law, holding a professional license in California is not sufficient to
support personal jurisdiction over the license holder. *Crea v. Busby*, 48 Cal. App. 4th
509, 515 (1996) (finding that the court had no general jurisdiction over respondent whose
only contact with the forum was his law license, where he had not practiced law in
California for 14 years, and does not maintain an office, solicit clients, own property, or
advertise in California); *Modlin v. Superior Court*, 176 Cal. App. 3d 1176, 1181 (1986)
(finding that the court had no personal jurisdiction over a petitioner who had license to
practice medicine in California and occasionally attended medical conferences and
visited his daughter in California). Further, Dr. Leahy is not domiciled in California, and
Plaintiffs have provided only scant evidence of any contacts with California. Declaration
of P. Michael Leahy ("Leahy Decl.") (Dkt. 20-1) ¶ 4; Declaration of Vasili Gatsinaris in
Support of Opposition ("Gatsinaris Decl. Opp'n") ¶ 2. The Court does not have general
jurisdiction over Dr. Leahy.

        Currently, there are also insufficient allegations to support specific jurisdiction
over Dr. Leahy.

        Generally, courts may assert specific jurisdiction over a claim for relief that arises
out of the defendant's forum-related activities. *Rano v. Sipa Press, Inc.*, 987 F.2d 580,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                    Date: July 10, 2015
                                                                       Page 26

588 (9th Cir. 1993). The Ninth Circuit has established a three-part test for determining whether a court may exercise specific jurisdiction:

> (1) the defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

> (2) the claim must arise out of or result from the defendant's forum-related activities; and

> (3) exercise of jurisdiction must be reasonable.

*Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). The plaintiff bears the burden of establishing the first and second element, and if the plaintiff fails to satisfy either of these elements, personal jurisdiction is not established. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff establishes the first two elements, then it is the defendant's burden to "present a compelling case" that the third element, reasonableness, has not been satisfied. *Id.* (quoting *Burger King*, 471 U .S. at 477).

While the "parties' relationships with each other may be significant in evaluating their ties to the forum," the requirements for personal jurisdiction "must be met as to each defendant." *Rush v. Savchuck*, 444 U.S. 320, 332 (1990). "The mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F. Supp. 2d 1104 (1999) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

Plaintiffs base their arguments in large part on Dr. Leahy's role in directing the corporate defendants. However, allegations against an individual in his or her capacity as a corporate leader must be sufficient to suggest that he or she had some degree of participation or control over a corporation's actions. *Salesbrain, Inc. v. AngelVision Technologies*, No. C 12-5026, 2013 WL 1191236 at *8 (N.D. Cal. Mar. 21, 2013). In *Salesbrain*, the court found that plaintiffs' allegations against a corporate defendant's president were "too vague and conclusory" to suggest this degree or participation or control. *Id.* The plaintiffs alleged that the defendant corporation's copying of the plaintiffs' work was "performed by, at the direction of, or under the supervision" of the president, and that the president had the ability to supervise the copying, had a financial interest in the infringing activity. *Id.* at 6. The court found that, consistent with other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 15-0741-DOC (RNBx)                                        Date: July 10, 2015
                                                                                        Page 27

district court opinions, such allegations and "facts" are "far too attenuated from the
alleged [wrongful conduct]" to find specific personal jurisdiction over the president in his
individual capacity. *Id.* at 8, 11; *see also Marsh v. Zaazoon Solutions, LLC*, No. 11-5226,
2012 WL 92226 at *9 (N.D. Cal. Mar. 20, 2012); *Clerkin v. MyLife.com, Inc.*, 2011 WL
3607496 at *1-2 (N.D. Cal. Aug. 16, 2011).

Plaintiffs have only mentioned Dr. Leahy by name in two instances in their
allegations: that Dr. Leahy formed ARTCS, Compl. ¶ 14; and that ART LLC informed
Dr. Gatsinaris that Dr. Leahy would "get back to him" about recertification. *Id.* ¶ 22.
Plaintiffs' allegation that all Defendants acted "with knowledge, consent, and permission
of, and in conspiracy" with every other Defendant is not sufficient to establish that the
underlying claims arose out of Dr. Leahy's individual acts in California. The same
applies to Plaintiffs' allegation that "the acts of each of the Defendants were fully ratified
by each and all the Defendants," and that the acts alleged "were approved, ratified, and
one with cooperation and knowledge of each and all the Defendants." *Id.* ¶ 8.  Like in
*Salesbrain*, Plaintiffs' allegations regarding Dr. Leahy's involvement in the underlying
action are too limited and conclusory to justify personal jurisdiction over Dr. Leahy in his
individual capacity at this time. Accordingly, Plaintiffs have not sufficiently
demonstrated that their claims arose from Dr. Leahy's forum-related activities.

Given the fact-intensive nature of this inquiry, however, the Court will grant
Plaintiffs leave to engage in additional discovery on the issue of whether sufficient
jurisdictional contacts with California exist to support specific jurisdiction over Dr.
Leahy. Plaintiffs have two months for additional discovery, at the end of which time
Plaintiffs may submit an amended complaint that should contain additional allegations
supporting the exercise of personal jurisdiction over Dr. Leahy. At that time, Dr. Leahy
may choose to renew his motion. If no amended complaint is filed, he may likewise
renew the motion.

For the aforementioned reasons, this motion is DENIED WITHOUT
PREJUDICE. Plaintiffs may have until **September 7, 2015** to conduct discovery limited
regarding the issue of personal jurisdiction over Dr. Leahy.

## VI.    Disposition

For the reasons set forth above:

- Defendants' Motion to Dismiss pursuant to the *Colorado River* doctrine is
  DENIED.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-0741-DOC (RNBx)                                    Date: July 10, 2015
                                                                                                            Page 28

- Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED IN PART AND DENIED IN PART.

  o Plaintiffs' claims for violations of the California Cartwright Act and Unfair Competition Law are DISMISSED WITHOUT PREJUDICE.

  o Plaintiffs' claims for intentional interference with prospective economic advantage and negligent interference with prospective economic advantage are DISMISSED WITHOUT PREJUDICE.

  o The Motion is DENIED as to Plaintiffs' claim for intentional interference with contractual relations under California law.

- Defendant's Motion to Dismiss Plaintiffs' declaratory judgment is GRANTED.

- Dr. Leahy's Motion to Dismiss for lack of personal jurisdiction is DENIED WITHOUT PREJUDICE. Plaintiffs may conduct additional jurisdictional discovery into Dr. Leahy's contacts with the forum state, to be completed by **September 7, 2015**.

- Plaintiffs may file an amended complaint, if desired, on or before **September 14, 2015**.

- Plaintiffs should incorporate additional facts as to jurisdiction over Dr. Leahy in the amended complaint. Dr. Leahy may file a renewed motion after the filing of the amended complaint. If Plaintiffs do not file an amended complaint, Dr. Leahy may renew his motion by **September 21, 2015**.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                    Initials of Deputy Clerk: djg
CIVIL-GEN